**NATIONAL WESTERN LIFE INSURANCE COMPANY, Petitioner,**

v.

**William M. ACREMAN, d/b/a Acreman Construction Company, Respondent.**

**No. B–346.**

Supreme Court of Texas.

March 20, 1968.

Phipps, Smith & Alexander, A. A. Alexander, Jr., Galveston, for petitioner.

William J. Benardino, Conroe, for respondent.

CALVERT, Chief Justice.

This is a suit by W. M. Acreman on a sworn account for labor and materials furnished to build a road and to establish and foreclose a mechanic's and materialman's lien on 160 acres of land. Henry S. Fuller, II, Gerald J. Creighton, Jr., and National Western Life Insurance Company were named as defendants in the plaintiff's petition. Fuller defaulted and the trial court rendered judgment against him awarding Acreman a recovery of the full amount of the debt. Trial of the issues as to the other defendants was to the court without a jury and judgment was rendered establishing a mechanic's and materialman's lien on the 160 acres of land as security for Acreman's debt, foreclosing the lien, and ordering the land sold to satisfy the money

judgment. Creighton was in reality only a nominal party and only National Western perfected an appeal.

The court of civil appeals affirmed the trial court's judgment in so far as it awarded Acreman a recovery against Fuller but reversed the judgment in so far as it established and foreclosed the lien on the 160–acre tract of land and remanded this phase of the case to the trial court for retrial. 415 S.W.2d 265. We reverse the judgments of the courts below on the lien phase of the case and here render judgment that plaintiff take nothing.

On February 24, 1964, Fuller, who appears to have been doing business as Statewide Properties, entered into a contract with Acreman whereby Acreman was to build a road 60 feet wide and approximately 4,350 feet long on Pine Acres Estates, a 160–acre tract of land then owned by one Sisk. Acreman began work in the early part of March and completed the road on May 22, 1964. He did not know that Fuller was not the owner of the land when the contract was executed and made no inquiry with respect to ownership until after the road was completed.

Sisk conveyed the land to Fuller by warranty deed on April 3 and the deed was recorded on April 4. National Western lent Fuller $65,000 as a part of the purchase price of the land, took his note for that sum and paid some of the money to Sisk who reserved a vendor's lien in the deed to Fuller to secure payment of the note. Simultaneously with execution of the deed and note, Fuller also executed a deed of trust for the benefit of National Western as additional security for the note. The deed of trust was also recorded on April 4. Also simultaneously with execution of the deed, note and deed of trust, Fuller and National Western entered into an escrow contract by the terms of which $1,500 of the $65,000 loan was to be held in escrow by National Western to ensure performance by Fuller of an agreement to construct or have constructed, within 60 days, a gravelled road

60 feet wide and extending from the west boundary line to the east boundary line of the property. Following default by Fuller in making payments on his note, Creighton, as substitute trustee, foreclosed the deed of trust lien under a power of sale, and National Western bought in the property at the trustee's sale.

On the basis of the facts summarized, it was the position of Acreman in the trial court that he had a constitutional and a statutory mechanic's and materialman's lien on the property on which the road was built which was prior and superior to the lien held by National Western. The trial court agreed. The court of civil appeals held that Acreman did not have a constitutional lien; National Western's lien was prior and superior in its inception to Acreman's lien; National Western had "consented" to Acreman's lien and thus had somehow made Acreman's lien superior to National Western's lien to the extent of $1,500; under the provisions of Article 5458, Acreman's lien attached to only 50 acres of the 160–acre tract; and that as to National Western, there was no evidence that Acreman had fully complied with the provisions of Article 5453 for perfecting his lien. The last holding required reversal of the trial court's judgment on the lien phase of the case, and a remand was ordered, no doubt to afford Acreman an opportunity to prove full compliance with Article 5453. In its crucial holding the court of civil appeals said: "Construing all instruments executed on April 3, 1964, the insurance company consented to Fuller thereafter entering into a M&M lien for the construction of a road in the location agreed upon but limiting the insurance company's liability to $1,500."

Acreman does not complain of the court of civil appeals' judgment or of its holdings. National Western does. It contends that the court of civil appeals erred in holding that by execution of the various instruments it had consented to the Acreman lien and that by consenting it had given the lien a

status of superiority. We agree with National Western.

■ For purposes of this opinion, we assume that Acreman has no constitutional lien on the land inasmuch as that holding of the court of civil appeals is not challenged. We also assume that at the time of its inception National Western's lien was prior and superior to Acreman's lien since no complaint is made by Acreman of that holding. We further assume that on retrial the evidence would establish compliance by Acreman with statutory procedures for perfecting his lien. With these assumptions, we reach the question which the court of civil appeals apparently regarded as controlling the parties' rights.

■ The opinion of the court of civil appeals does not tell us why execution of the instruments of April 3 constituted consent by National Western to the fixing of a mechanic's and materialman's lien on the property. The only relevant provision of the deed of trust states only that Fuller would "not to allow to be fixed, or enter into any contract whereby there may be fixed * * * any Mechanic's Lien or other lien of any character whatsoever" without the written consent of National Western. The provisions of the escrow agreement repel a conclusion that National Western consented to the fixing of a lien as security for labor performed or materials furnished in building a road. The contract recites that Fuller had agreed to construct a road or to have it constructed, and that National Western was authorized to withhold $1,500 from its loan of $65,000 to ensure compliance. Paragraphs 2(b) and 4 read as follows:

"2.(b) When COMPANY shall have received evidence satisfactory to itself that such roadway has been satisfactorily completed and at the place specified, COMPANY shall disburse to BORROWER the sum of ONE THOUSAND FIVE HUNDRED AND NO/100 ($1,500.00) DOLLARS from the Escrow Fund.

\* \* \* \* \* \*

"4. It is distinctly understood and agreed that this Agreement is not made for the benefit of any independent contractor, material supplier, or workman, nor is COMPANY bound by or obligated to look to any agreement by and between BORROWER and any other person or persons relating or respecting to the construction or completion of said roadway."

The quoted provisions very clearly set aside a sum of money to be paid to Fuller personally upon satisfactory completion of the road. The fund was expressly made immune to claims of third persons, and there is no mention in the agreement that National Western consented to the fixing of a lien on the mortgaged property.

■ The opinion of the court of civil appeals does not indicate why the court concluded that mere consent to the subsequent fixing of Acreman's lien on the property would make the lien superior to National Western's lien. Mere consent by a lienholder to creation of a second lien does not make the second lien superior. Security Mortgage & Trust Co. v. Caruthers, 11 Tex. Civ.App. 430, 32 S.W. 837 (1895, no writ). There is in the record no proof of an express agreement for subordination of National Western's lien and no evidence from which such an agreement may reasonably be inferred. Neither waiver nor estoppel is in the case by either pleading or evidence.

■ If Acreman had a lien on the subject property, the lien, on the record before us and in light of unchallenged holdings by the court of civil appeals, was junior and inferior to the lien held by National Western. When National Western's lien was foreclosed, the purchaser at the trustee's sale acquired title to the property freed of the claims of Acreman. Wilkinson v. First National Bank of Crosbyton, 118 Tex. 202, 13 S.W.2d 346 (1929); Hampshire v.

Greeves, 104 Tex. 620, 143 S.W. 147 (1912); Kennard v. Mabry, 78 Tex. 151, 14 S.W. 272 (1890). It follows that Acreman has no enforceable lien against the property and that judgment should have been rendered that he take nothing in so far as he sought to establish and foreclose a lien on the property.

The judgment of the trial court awarding Acreman a money recovery against Fuller has become final and is left undisturbed. The judgment of the court of civil appeals is modified and judgment is here rendered that Acreman take nothing by virtue of his suit to establish and foreclose a lien.