**NIPPER–BERTRAM TRUST and Oscar Nipper, Appellants,**

v.

**ALDINE INDEPENDENT SCHOOL DISTRICT, Harris County, et al., Appellees.**

No. 14–01–00442–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 9, 2002.

Rehearing Overruled June 27, 2002.

---

Donn A. Joers, Houston, for appellants.

Ernest C. Garcia, Austin, Jonathan C. Hantke, Leah Stolar, Michael P. Fleming, Pamela Ann Walters, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an appeal of an order disbursing alleged excess proceeds of $5,946.46 resulting from the judicial foreclosure of a tax lien. The underlying judgment dealt with delinquent taxes on two lots—Lots 6 and

7. Appellants Oscar Nipper and Nipper–Bertram Trust, two of the three former property-owners, appeal the district court's denial of their request for the excess proceeds. They seek the excess proceeds from the tax sale of Lot 6, and the taxing authorities seek to apply those proceeds to monies owing on the judgment. Because we find that taxes, penalties, and interest were due on Lot 6 after the date of the judgment, and unpaid taxes, penalties, interest or other amounts due under the judgment were not satisfied from the tax sales, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Josephine D. Bertram (now deceased), Oscar Nipper, and Nipper–Bertram Trust jointly owned two lots in Harris County upon which they failed to pay *ad valorem* taxes. In June 1997, Aldine Independent School District ("Aldine ISD") filed suit and several other taxing authorities (collectively, the "Intervenors")[1] intervened in the suit to recover delinquent taxes, penal-

ties, interest, costs, and attorney's fees, as well as to foreclose tax liens. After a bench trial based on stipulations among the parties, the trial court entered a judgment. The judgment, signed October 22, 1998, covered the two properties—Lots 6 and 7. It awarded Aldine ISD and the Intervenors (1) a judgment *in personam* against the unknown heirs of Josephine D. Bertram for delinquent property taxes owed for 1992 and (2) a judgment *in rem* only for foreclosure of the tax liens on the two lots against all property owners for taxes owed for 1982 and 1984—1991.[2] The judgment was not appealed.

Thereafter, the clerk of the court issued one order of sale for both lots and the constable held a tax sale on March 7, 2000. The constable sold the lots separately. A third party purchased Lot 6 for more than the minimum bid, resulting in excess proceeds after the constable distributed monies in accordance with the Tax Code. *See* TEX. TAX CODE ANN. § 34.02 (Vernon Supp. 2000).[3] No one bid on Lot 7. Consequent-

---

1. The Intervenors are Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, Harris County Hospital District, North Harris Montgomery Community College District, and the City of Houston.

2. Oscar Nipper and the Nipper–Bertram Trust were not held personally liable for any of the taxes owed.

3. § 34.02 Distribution of Proceeds
   a) The proceeds of a tax sale under Section 33.94 or 34.01 shall be applied in the order prescribed by Subsection (b). The amount included under each subdivision of Subsection (b) must be fully paid before any of the proceeds may be applied to the amount included under a subsequent subdivision.
   b) The proceeds shall be applied to:
   (1) all costs of advertising the tax sale and all original court costs payable to the clerk of the court;
   (2) all fees and commissions payable to the officer conducting the sale;

   (3) taxes, penalties, and interest that are due under the judgment; and
   (4) any other amount awarded to a taxing unit under the judgment.
   c) If the proceeds are not sufficient to pay the total amount included under any subdivision of Subsection (b), each participant in the amount included under that subdivision is entitled to a share of the proceeds in an amount equal to the proportion its entitlement bears to the total amount included under that subdivision.
   d) If the sale is pursuant to foreclosure of a tax lien, the officer conducting the sale shall pay any excess proceeds after payment of all amounts due all participants in the sale as specified by Subsection (b) to the clerk of the court issuing the order of sale.
   e) If the sale is pursuant to seizure of personal property, the officer conducting the sale shall distribute any excess of proceeds as provided by law for excess proceeds in the case of execution.
   f) In this section, "taxes" includes a charge, fee, or expense that is expressly authorized by Section 32.06 or 32.065.

ly, it was "struck off" to Aldine ISD for its minimum bid amount—the adjudged fair market value—resulting in a deficiency owing for judgment amounts due on Lot 7.[4]

The constable remitted $5,946.46 as excess proceeds from the foreclosure of Lot 6 into the registry of the court. In the meantime, however, *ad valorem* taxes, penalties and interest had become due on both lots for tax years 1998–2000. These monies remained unpaid at the time of the tax sale. Nipper and Nipper–Bertram Trust filed a "Motion to Recover Excess Proceeds of Tax Sale" on May 15, 2000, and Aldine ISD and the Intervenors filed a "Joint Petition to Withdraw Excess Proceeds" on July 6, 2000. On November 3, 2000, the Tax Master ruled the taxing authorities were entitled to the excess proceeds. Nipper and Nipper–Bertram Trust appealed that decision. *See* TEX. TAX CODE § 33.74. The trial court conducted a *de novo* hearing and signed an "Order Disbursing Excess Proceeds From the Registry of the Court" on February 2, 2001 (the "Disbursement Order"), awarding the funds to the taxing authorities. The trial court entered findings of fact and conclusions of law on March 23, 2001. Nipper and Nipper–Bertram Trust timely filed this appeal.

### ISSUE PRESENTED

Nipper and Nipper–Bertram Trust present one issue: Did the trial court err in

determining that the excess proceeds from the foreclosure of the tax lien on Lot 6 should be available to satisfy a deficiency and post-judgment taxes, penalties, and interest owing on Lot 7, on the ground that both properties were made the subject of the same tax judgment, even though both were treated separately for tax purposes?

### STANDARD OF REVIEW

The issue presented requires a review of the trial court's interpretation and application of the Texas Tax Code. Statutory interpretation presents a question of law subject to *de novo* review. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997). A trial court has no discretion when evaluating a question of law. *See Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex.1996); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Accordingly, we give no particular deference to the trial court's findings. *Walker*, 827 S.W.2d at 840. Instead, we conduct an independent review and evaluate the statute to determine its meaning. *See Lozano v. Lozano*, 975 S.W.2d 63, 66 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

### ANALYSIS

Although the only issue presented is the propriety of the application of excess proceeds from the tax sale of Lot 6 to satisfy

TEX. TAX CODE ANN. § 34.02 (Vernon Supp. 2000).

4. *See id.* § 34.01(j) (Vernon Supp.2000), which reads:

If a bid sufficient to pay the lesser of the amount calculated under Subsection (b) or the adjudged value is not received, the taxing unit that requested the order of sale may terminate the sale. If the taxing unit does not terminate the sale, the officer making the sale shall bid the property off to the taxing unit that requested the order of sale,

unless otherwise agreed by each other taxing unit that is a party to the judgment, for the aggregate amount of the judgment against the property or for the market value of the property as specified in the judgment, whichever is less. The duty of the officer conducting the sale to bid off the property to a taxing unit under this subsection is self-executing. The actual attendance of a representative of the taxing unit at the sale is not a prerequisite to that duty.

the judgment deficiency remaining on Lot 7, another issue is implicit because Nipper and Nipper–Bertram Trust pray for the *total* amount of the excess proceeds. Their appellate brief is silent on whether the taxing authorities are entitled to unsatisfied post-judgment taxes, interest, and penalties owing on Lot 6 out of the excess proceeds. We will address this issue first.

## Amounts that Remained Owing on Lot 6

■ Nipper and Nipper–Bertram Trust pray for all of the excess proceeds from the tax sale of Lot 6. Yet, the taxing authorities point out that pre-foreclosure monies remained due and owing on Lot 6 and they should be awarded those amounts from the excess proceeds. *See* Tex. Tax Code Ann. § 34.04(c)(1). We agree with the taxing authorities.

The tax sale occurred seventeen months after the date of the judgment. During that time, additional property taxes, interest, and penalties became due on Lot 6. At the hearing to decide the distribution of excess proceeds, Aldine ISD and the Intervenors presented evidence that post-judgment taxes, penalties, and interest for 1998—2000, in the amount of $3,649.82, were still due and owing on Lot 6. Nipper and Nipper–Bertram Trust did not controvert this evidence.

In spite of their claim to the *total* amount of the excess proceeds, in their appellate brief, Nipper and Nipper–Bertram Trust do not challenge the taxing authorities' entitlement to these additional monies owed on Lot 6. Under the plain language of the Tax Code, section 34.04, entitled "Claims for Excess Proceeds," such a challenge would be futile. That provision reads:

> (c) At the hearing the court shall order that the proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:
>
> (1) to a taxing unit for any taxes, penalties, or interest that have become due or delinquent on the subject property subsequent to the date of the judgment;
>
> (2) to any other lienholder, consensual or otherwise, for the amount due under a lien, in accordance with the priorities established by applicable law;
>
> (3) to a taxing unit for any unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that were not satisfied from the proceeds from the tax sale; and
>
> (4) to each owner of the property.

*Id.* § 34.04. The priority of payment of excess proceeds to the taxing authorities under subsection (c)(1) is not ambiguous. The taxing authorities proved the *subject property*, Lot 6, had $3,649.82 due or delinquent *subsequent to the judgment.* Consequently, they are entitled to collect from the excess proceeds those amounts owed on Lot 6 arising after the judgment until the date of sale. Accordingly, that part of the Disbursement Order is affirmed. Appellees are entitled to their respective shares of $3,649.82.

## Post-judgment Amounts Due and Owing on the Judgment

Nipper and Nipper–Bertram Trust assert the taxing authorities are not entitled to recover remaining amounts due and owing on the judgment from the excess proceeds of the foreclosure sale on Lot 6 because those proceeds can only be used to pay amounts due and owing on Lot 6. This argument is belied by the plain language of section 34.04(c)(3), which gives priority to a taxing unit for any "unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that was not satisfied from the proceeds from the

tax sale." The taxing authorities established that they have not been made whole under the judgment, and thus it seems that they would be entitled to the remaining balance of excess proceeds ($2,296.64) in this case. Yet, Nipper and Nipper–Bertram Trust argue that each lot had a separate tax identification number and was treated separately for appraisal and assessment purposes, and the proceeds of one cannot be used to pay the taxes due on the other. This, they claim, would result in a disproportionate assessment on Lot 6. Further, they argue that a taxing authority that holds property "struck off" to it cannot collect delinquent amounts owed to it under section 34.01(k) of the Texas Tax Code.

■ We begin our analysis with the Tax Code. It requires that we construe it in accordance with the Code Construction Act, except as otherwise expressly provided. TEX. TAX CODE ANN. § 1.03; *see also* TEX. GOV'T CODE ANN. §§ 311.001–.032 (Vernon 1988). Section 311.021 of the Code Construction Act states:

> ... In enacting a statute, it is presumed that:
>
> ... (3) a just and reasonable result is intended;
>
> (4) a result feasible of execution is intended; and
>
> (5) public interest is favored over any private interest.

*Id.* § 311.021.

■ When interpreting statutes, we must give effect to the intent of the legislature by looking to the plain and common meaning of the statute's words; if the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words and terms. *Fitzgerald v.*

*Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). In ascertaining legislative intent, words and phrases "shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011.

Section 34.04(c)(3) reads:

> (c) At the hearing the court shall order that the proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:
>
> ... (3) to a taxing unit for any unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that were not satisfied from the proceeds from the tax sale....

*Id.* § 34.04(c). The phrase "unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment" is modified by the word "any." It is not restricted to any monies owed attributable to separate parcels of property, or separate tax liens; rather, this provision broadly encompasses *all* monies owed under the judgment.

There is but one judgment entered in this case, and the plain reading of the Tax Code provision requires us to look to it. The judgment provides for a judgment *in personam* for the recovery of $5,985.55 and a judgment *in rem* for the recovery of $65,795.24. The record shows that the proceeds of the tax sales of Lots 6 and 7 did not satisfy these adjudged amounts owed for taxes, penalties, interest, attorney's fees, and costs. Therefore, there is a priority to their payment before any excess proceeds are distributed to the owners of the property.

We find the structure of Section 34.04(c) comports with one of the overriding goals

of the Tax Code, namely to collect revenue. The Legislature's decision to adopt a statutory scheme that sets property owners last in priority to excess proceeds suggests an intent to provide taxing authorities with an additional avenue for delinquent tax collection. The purpose of a taxing unit is to assess and collect revenues; the provisions of the Tax Code are a means to that end. *Syntax, Inc. v. Hall*, 899 S.W.2d 189, 192 (Tex.1995). The plain language of section 34.04(c)(3) effectuates this purpose.

■ Additionally, we find the issue Nipper and Nipper–Bertram Trust present to be a veiled attack on the very judgment to which they agreed. The judgment recites, in part:

> IT IS FURTHER ORDERED that the proceeds of any foreclosure sale of such property made hereunder to any purchaser other than a taxing unit who is a party to this suit, shall be applied first to the payment of all costs of making the sale and costs of court and then to the payment of the judgment and liens foreclosed herein, and the residue, if any, shall be placed in the registry of the Court in the form of excess proceeds. . . .

Though the tax lien on Lot 6 does not secure the payment of the tax lien on Lot 7, in this case there is an identity of property owners for the two lots and Nipper and Nipper–Bertram Trust permitted the taxing authorities to obtain one judgment covering the two lots. If the judgment involved different owners or non-adjacent properties, a severance would have been required and use of the proceeds restricted to each lot respectively. But there was no attempt to sever the taxing authorities' claims against Lots 6 and 7; nor were there two orders of sale or any other segregation of proceeds from the tax sale of each lot.

■ To preserve a complaint about the judgment entered, a party should note on the record its disagreement with the content and result of the judgment or some portion thereof. *First National Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex.1989) (per curiam). No objection to the form or content of the judgment is in the record; Nipper and Nipper–Bertram Trust did not appeal the judgment or file a motion for new trial. In fact, as their counsel acknowledged at oral argument, they affirmatively agreed to the judgment. As a result, Nipper and Nipper–Bertram Trust cannot complain that the proceeds from the sale of Lot 6 were used to satisfy remaining amounts adjudged due under the judgment, including the deficiency existing after foreclosure of the tax lien on Lot 7. *See Litton Indus. Prod. Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex. 1984) (holding a party who moves for judgment in form entered waives any error in the judgment). Because Nipper and Nipper–Bertram Trust agreed to the judgment, we hold they waived their entitlement to have the lots treated separately under the judgment.

In summary, Nipper and Nipper–Bertram Trust waived any complaint concerning the use of excess proceeds from the foreclosure of the tax lien on Lot 6 to pay the deficiency on Lot 7 when they agreed to the judgment. Even absent this waiver, they could not prevail because the language in section 34.04(c)(3) is unambiguous. Any excess proceeds in the registry of the court goes to a taxing unit for "any unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that were not satisfied from the proceeds from the tax sale." As a result, the excess proceeds from the tax sale of Lot 6 may be applied to the amounts due and owing under the judgment for Lot 7. After a plain reading of section 34.04(c)(3), the taxing authorities are entitled to the remain-

ing $2,296.64 of proceeds in the registry of the trial court.

### CONCLUSION

Because there remained taxes, penalties, and interest due or delinquent on Lot 6 after the date of the judgment and before the tax sale as well as unsatisfied amounts due under the judgment, the taxing authorities are entitled to all the excess proceeds in the registry of the court.

We overrule the sole issue presented and affirm the trial court's Disbursement Order.