**CONSECO FINANCE SERVICING CORP. f/k/a Green Tree Financial Servicing Corporation, Appellant,**

v.

**J & J MOBILE HOMES, INC. d/b/a Select Homes, Appellee.**

No. 2–02–273–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 16, 2003.

Higier Lautin Foxman McKinney & Owen, P.C., Richard A. McKinney, Addison, for Appellant.

William K. Clary, Bridgeport, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Conseco Finance Servicing Corporation, f/k/a Green Tree Financial Servicing Corporation, appeals the take-nothing judgment rendered on its claims following a bench trial on stipulated facts. In three points, appellant contends that the trial court erred: (1) by ruling that appellant's security interest in a manufactured home was extinguished by a tax sale; (2) in finding that appellant did not have a continuing security interest in the home; and (3) in finding that appellant was not entitled to foreclose on the home. We affirm the trial court's judgment.

## STANDARD OF REVIEW

This action was tried to the bench on stipulated facts. Under such circumstances, the reviewing court generally may not find any facts not conforming to the agreed statement, unless the agreement provides otherwise. *State Bar v. Faubion,* 821 S.W.2d 203, 205 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Accordingly, we will review only the correctness of the trial court's application of law to the stipulated facts, and not infer or find any facts absent from the parties' stipulation. *See Rabinowitz v. Cadle Co. II, Inc.,* 993 S.W.2d 796, 797 (Tex.App.-Dallas 1999, pet. denied); *Gibson v. Drew Mortgage Co.,* 696 S.W.2d 211, 213 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.).

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex.1996). Where a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Id.* Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *Point Lookout W., Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987). We must

uphold the judgment regardless of whether the trial court articulates the correct legal reason for the judgment. *See Harrington v. R.R. Comm'n*, 375 S.W.2d 892, 895 (Tex.1964); *Dale v. Fin. Am. Corp.*, 929 S.W.2d 495, 497–98 (Tex.App.-Fort Worth 1996, writ denied).

## STIPULATED FACTS

On August 22, 1996 Frances McAdams purchased a manufactured home and executed a retail installment contract and security agreement for the purchase. Appellant purchased the contract and obtained a perfected security interest in the manufactured home, which was noted on the certificate of title. McAdams became delinquent in the property taxes. Boyd ISD and Wise County perfected tax liens on the home for the tax years 1997–2000.

Because of the delinquent taxes, an order for a tax warrant was entered on December 11, 2000. The warrant issued on December 18, 2000, and the taxing authorities seized the home the same day. The home was posted for foreclosure because of the unpaid taxes, and appellant received notice on January 6, 2001. On January 17, 2001 the home was sold at public auction to appellee, J & J Mobile Homes d/b/a Select Homes. The parties stipulate that the taxing authorities followed the statutory requirements of a summary tax sale under the Texas Tax Code. Tex. Tax Code Ann. §§ 33.21 .25 (Vernon 2001).

Acting pursuant to a court order granting appellant's Motion to Distribute Excess Proceeds, the district clerk sent a check for $5,872.37. Appellant accepted the check, leaving a balance owed on the home of $74,850.13, plus interest.

The parties agree that, until the date of the tax sale, appellant had a valid security interest in the home. The status of appellant's lien is only contested after the tax sale.

## PRIORITY OF THE TAX LIEN

Appellant presents three issues on appeal. In its first issue, it claims that the trial court erred in concluding that its lien was extinguished by the January 17, 2001 tax sale.

Under the Texas Tax Code, on January 1 of each year, a tax lien attaches to property to secure the payment of all taxes imposed for the year, regardless of whether the taxes are imposed in the year the lien attaches. Tex. Tax Code Ann. § 32.01(a). Moreover, the tax code dictates that:

[A] tax lien provided by this chapter takes priority over the claim of any creditor of a person whose property is encumbered by the lien and over the claim of any holder of a lien on property encumbered by the tax lien, whether or not the debt or lien existed before attachment of the tax lien.

*Id.* § 32.05(b). Although there are a certain exceptions to the priority status of tax liens, none are applicable to this case. *See id.* § 32.05(c).[1]

The parties do not dispute the fact that both appellant and the taxing authorities held duly perfected liens on the same property. Appellant's lien was properly recorded on the certificate of title, and pursuant to the tax code, the tax lien attached to the property on January 1, 1997. *Id.* § 32.01(a). The Manufactured Housing Standards Act provides that proper registration and recordation of a lien under the Act is notice to all persons that the lien exists. Tex.Rev.Civ. Stat. Ann. art.

---

1. The tax code gives priority over tax liens to a survivor's allowance, funeral expenses, expenses of a last illness, restrictive covenants, and valid easements recorded before January 1 of the year in which the tax lien arises. Tex. Tax Code Ann. § 32.05(c).

5221f, § 19(m) (Vernon Supp.2003). Liens recorded or registered under the Act have priority, in the chronological order of recordation, over other liens or claims against the manufactured home, *other than as expressly provided by Chapter 32, Tax Code. Id.* Thus, any priority status granted by the act is made subject to the provisions of the tax code, which expressly grant priority status to tax liens. TEX. TAX CODE ANN. § 32.05(b). Therefore, under section 32.05(b) of the tax code, the tax lien was superior to appellant's lien. *Id.*

To protect the property interests of other lienholders, a taxing authority is required to comply with certain notice and procedural requirements before selling property at a tax sale to collect delinquent taxes. *See id.* § 33.25; *see also Burleson v. Gen. Elec. Capital Corp.,* 831 S.W.2d 54, 60 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (holding that lack of notice of a tax sale to junior lienholders is a basis for a claim for damages against the taxing authority). Even so, failure to send notice to a junior lienholder does not affect the validity of the sale or title to the seized property. *See* TEX. TAX CODE ANN. § 33.25(b). Although appellant does not dispute that it received proper notice of the tax sale, appellant nonetheless claims that its lien on the home survives a properly conducted tax sale on the property. We hold that it does not.

Appellant relies heavily on *Burleson v. General Electric Capital Corporation.* In *Burleson,* GECC, the junior lienholder, financed the purchase of a mobile home and duly perfected its lien. 831 S.W.2d at 57. Because of delinquent taxes, a tax warrant issued, the home was seized, and a summary sale conducted. *Id.* The taxing authority failed to conduct a reasonable search to determine whether other lienholders existed on the home. *Id.* at 58. As a result, GECC was not given notice of the sale. *Id.* Consequently, the purchaser

of the home at the tax sale also had no notice that a lien existed on the home. *Id.*

The *Burleson* court held that the purchaser was a bona fide purchaser who bought the home in good faith, for valuable consideration, without knowledge of any outstanding claims against the property. *Id.* at 59. GECC's lien was extinguished by the tax sale, and it was unable to defeat the purchaser's title because of the purchaser's bona fide status. *Id.* Although GECC could not defeat the purchaser's claim of title based upon lienholder's lack of notice, the court did not preclude GECC from recovering from the governmental entities on a negligence theory because they failed to give notice of the tax sale. *Id.* at 60.

*Burleson* can be distinguished from the present case since the present case does not involve a bona fide purchaser, or a claim for damages against the taxing authority. The holding of *Burleson* provides recourse for perfected junior lienholders, who are damaged when governmental authorities deprive them of their property rights, by extinguishing their lien in foreclosure, without proper notice. *See id.* Here, appellant received proper notice.

The court and the junior lienholder in *Burleson* both recognized that the junior lien did not survive the foreclosure of a superior tax lien. *See id.* (noting that the lienholder's lien was "cut off" by the tax warrant sale and that the lienholder was deprived of its interest in the property). Moreover, the lienholder in *Burleson* never claimed that its lien survived the tax sale. *Id.* It was the appellants in *Burleson* who argued that the lien survived the tax sale in an attempt to avoid GECC's claim for damages.

■ In the present case, the taxing authority followed all required statutory procedures and provided adequate notice to

appellant. The *Burleson* holding tends to support appellee's proposition that appellant's junior lien was extinguished by foreclosure of the senior tax lien. It stands to reason that if an improperly conducted tax sale is sufficient to "cut off" the junior lienholder's interest in the property, a properly conducted tax sale does so as well.

The law of secured transactions and common law also provide us with guidance.[2] Under the business and commerce code, the disposition of collateral after default transfers to the transferee for value all of the debtor's rights in the collateral. TEX. BUS. & COM.CODE ANN. §§ 9.617, 9.622 (Vernon 2002). Disposition by foreclosure discharges the security interest being foreclosed, as well as any subordinate interests and liens. *Id.* § 9.617. Common-law also applies to both real and personal property.

▮▮▮ The Texas Supreme Court has noted that proper notice and foreclosure of a lien on property causes legal and equitable title in the property to merge. *See Flag–Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 9 (Tex.1987); *Arnold v. Eaton*, 910 S.W.2d 181, 184 (Tex. App.-Eastland 1995, no writ). Accordingly, in foreclosure prior lienholders are divested of title to the property, and their liens are extinguished. *See Nat'l W. Life Ins. Co. v. Acreman*, 425 S.W.2d 815, 817 (Tex.1968). Following the valid foreclosure of a senior lien, junior liens, if not satisfied from the proceeds of sale, are extinguished. *Id.* at 817–18; *Eaton*, 910 S.W.2d at 184; *Mortgage & Trust, Inc. v. Bonner & Co.*, 572 S.W.2d 344, 352 (Tex. Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). Thus, when a senior lien is fore-

closed, the purchaser at the sale acquires title to the property free from any junior lienholder claims. *Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 806 (Tex.1978) (op. on reh'g); *Irving Lumber Co. v. Alltex Mortg. Co.*, 468 S.W.2d 341, 343–44 (Tex. 1971); *Acreman*, 425 S.W.2d at 817–18; *Bonner & Co.*, 572 S.W.2d at 352.

Appellant agrees that the preceding rules apply to the foreclosure of real property; however, appellant argues that the legislature did not intend for liens on personal property to be extinguished. Appellant's basis for its argument is the absence of a comparable section to section 33.95 of the tax code from the subchapter entitled "Seizure of Personal Property."[3] Appellant reasons that the absence of the provision indicates that the legislature intended that only purchasers of real property at tax sales take free of junior liens and not those purchasing personal property. Thus, appellant's first issue presents us with a question of statutory interpretation.

## STATUTORY INTERPRETATION

▮▮ Statutory interpretation presents a question of law subject to de novo review. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997) (orig.proceeding); *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) (op. on reh'g). A trial court has no discretion when evaluating a question of law. *See Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex.1996) (orig.proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Accordingly, we give no particular deference to the trial court's findings. *Walker*, 827 S.W.2d at

---

2. The Manufactured Housing Standards Act supersedes any conflicting provisions of the business and commerce code; otherwise, the provisions of the business and commerce code apply to transactions relating to manufactured housing. TEX.REV.CIV. STAT. ANN. art. 5221f, § 19(p).

3. *Compare* TEX. TAX CODE ANN. §§ 33.21–.25 (subchapter B) *with* TEX. TAX CODE ANN. §§ 33.91–.95 (subchapter E).

840. Instead, we conduct an independent review and evaluate the statute to determine its meaning. *See Nipper–Bertram Trust v. Aldine I.S.D.*, 76 S.W.3d 788, 791–94 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (interpreting the Texas Tax Code); *Lozano v. Lozano*, 975 S.W.2d 63, 66 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

 A court's primary objective in construing a statute is to determine and give effect to the legislative intent. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). Under accepted principles of statutory construction, if the language of a statute is unambiguous, then the court must seek the legislative intent as found in the plain and common meaning of the words and terms used. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994). Common words should be interpreted as they are commonly used. *Elgin Bank v. Travis County*, 906 S.W.2d 120, 121 (Tex.App.-Austin 1995, writ denied).

 In our construction, we must presume that the entire statute is intended to be effective, a just and reasonable result is intended, a result feasible of execution is intended, and that the public interest is favored over private interest. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998); *Compass Bank v. Bent Creek Inv., Inc.*, 52 S.W.3d 419, 424 (Tex.App.-Fort Worth 2001, no pet.). Thus, we must consider the statute in its entirety, including the consequences that would follow from each proposed construction. *Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex.1999). So long as another reasonable interpretation exists, we are required to reject an interpretation of a statute that defeats the purpose of the legislation. *Id.; Dallas Cent. Appraisal Dist. v. Wang*, 82 S.W.3d 697, 700 (Tex.App.-Dallas 2002, no pet.) (interpreting the Texas Tax Code). Construction of a statute that would make a provision useless is not favored by law. *Carson v. Hudson*, 398 S.W.2d 321, 323 (Tex.Civ.App.-Austin 1966, no writ).

Specifically at issue in the present case, is the application of chapter 33, subchapter E, section 33.95 of the tax code, which provides:

> A purchaser for value at or subsequent to the tax sale may conclusively presume the validity of the sale and takes free of any claim of a party with a prior interest in the property subject to the provisions of Section 16.002(b), Civil Practice and Remedies Code, and subject to applicable rights of redemption.

TEX. TAX CODE ANN. § 33.95. Appellant argues that this provision, which is found in the subchapter headed "Seizure of Real Property," has no application in the present case because the manufactured home is considered personal property. Moreover, appellant reasons that the absence of a comparable provision from the subchapter titled "Seizure of Personal Property" indicates legislative intent that a tax sale should not extinguish pre-existing junior liens after a properly conducted tax sale. We disagree.

Subchapter E of the Texas Tax Code was added by senate bill 1545 during the seventy fourth legislative session. Act of May 27, 1995, 74th Leg., R.S., ch. 1017, § 1, 1995 Tex. Gen. Laws 5085, 5085–86 (amended 1997) (current version at TEX. TAX CODE ANN. § 33.95 (Vernon 2001)). When the legislature added subchapter E, it noted that subchapter B of chapter 33, which governed the seizure of personal property, provided an administrative process for taxing units to seize and sell personal property by warrant. HOUSE COMM. ON JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1545, 74th Leg., R.S. (1995). The legislature wanted to create a similar provision applicable to real property. *Id.*

In response, the legislature enacted senate bill 1545, as chapter 33, subchapter E, of the tax code. The subchapter was created with the intent to empower municipalities to seize and sell real property by warrant in the same manner as personal property. *Id.* The overall goal of the legislation was to facilitate the seizure of abandoned, unused, or vacant properties, revitalize deteriorated neighborhoods, reduce governmental expenditures, and provide an increased tax base. *Id.;* SENATE COMM.ON JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1545, 74th Leg., R.S. (1995).

As the legislative history demonstrates, the legislature's intent in enacting subchapter E of chapter 33 was simply to make the administrative process governing a taxing entity's seizure of property uniform, regardless of whether the property seized was real or personal property. Nothing in the legislative history or in the language of the statute itself indicates legislative intent to supercede the common-law rule that foreclosure of a senior lien extinguishes all junior liens. Indeed, if junior liens were to survive a foreclosure sale, buyers would have no incentive to bid on the property. Such an outcome would undermine the legislature's goals in enacting subchapter E. Although the heading of subchapter E, "Seizure of Real Property," provides guidance with respect to its application, it should not be interpreted in a way that would limit the application of the statutes found under it. *See* TEX. GOV'T CODE ANN. § 311.024.

Additionally, the statute itself uses the word "property" and does not distinguish between realty or personalty. *See* TEX. TAX CODE ANN. § 33.95. The tax code defines "property" as "any matter or thing capable of private ownership." *Id.* § 1.04(1). Thus, to interpret the statute in a manner that would limit its application solely to real property tax sales, as compared to all "property" sales, would be contrary to the overall purpose of the chapter.

The absence of a similar statute in the personal property subsection of the tax code cannot be construed to mean that a purchaser of personal property does not take free of the junior lien, as a purchaser of real property would. To construe the tax code in this way would produce an absurd result and undermine the intent of the legislature to facilitate tax sales of real property in the same manner as personal property. Since Texas is one of the few states that allows real property to be foreclosed upon nonjudicially, the application of real property nonjudicial procedures to the disposition of personal property is a reasonable application. *See* TEX. PROP. CODE ANN. § 51.002 (Vernon 1995). The public interest is best served if, in accordance with common law and consistent with the purpose of the tax code, the purchaser of personal property at a tax sale takes the property free from any claim of a party with a prior interest. Likewise, appellant's reliance on *Burleson* is misplaced because the *Burleson* court never addressed whether section 33.95 of the tax code applied to personal property since the section had yet to be added to the code at the time *Burleson* was heard.

■ Appellant also argues that the use of the words "subject to applicable rights of redemption" limit the statute's application to real property since there is no right of redemption with regard to personal property. Appellant cites no authority to support this proposition; accordingly, it is waived. *See* TEX.R.APP. P. 38.1(h) (providing that arguments must be supported by appropriate citations to authorities); *Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994) (citing long-standing rule that a point may be waived due to inadequate briefing).

Appellant further argues that the foreclosure of a tax lien is the same as a judgment lien and sale under execution. For authority he cites section 34.01 of the tax code, which states that the sale of property seized and sold in a tax sale shall be conducted in the manner similar to the way property is sold under execution. TEX. TAX CODE ANN. § 34.01(a). Appellant reasons that under Texas Rule of Civil Procedure 643 a tax lien is the equivalent of a judicial lien created when an officer levies upon personal property under a writ of execution. TEX.R. CIV. P. 643. Appellant argues a tax lien is therefore subordinate to a security interest noted on the certificate of title. We disagree. Appellant ignores the fact that tax liens are, by statute, given express priority status over security interests noted on certificates of title. *See* TEX. TAX CODE ANN. § 32.05. Section 34.01 addresses the procedures required for a proper tax sale; it does not convert a tax lien into a judicial lien. Therefore, we hold that the January 17 tax sale extinguished appellant's junior lien. We overrule appellant's first issue.

## CONCLUSION

In light of our holding, it is unnecessary for us to consider appellant's remaining issues. TEX.R.APP. P. 47.1. The judgment of the trial court is affirmed.