COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-273-CV
 
CONSECO FINANCE 
SERVICING CORP.                                    APPELLANT
F/K/A GREEN TREE 
FINANCIAL
SERVICING 
CORPORATION
 
V.
 
J & J MOBILE 
HOMES, INC. D/B/A                                             APPELLEE
SELECT HOMES

------------

FROM THE 271ST 
DISTRICT COURT OF WISE COUNTY

------------

OPINION

------------
        Conseco 
Finance Servicing Corporation, f/k/a Green Tree Financial Servicing Corporation, 
appeals the take-nothing judgment rendered on its claims following a bench trial 
on stipulated facts. In three points, appellant contends that the trial court 
erred: (1) by ruling that appellant’s security interest in a manufactured home 
was extinguished by a tax sale; (2) in finding that appellant did not have a 
continuing security interest in the home; and (3) in finding that appellant was 
not entitled to foreclose on the home. We affirm the trial court’s judgment.
STANDARD OF REVIEW
        This 
action was tried to the bench on stipulated facts. Under such circumstances, the 
reviewing court generally may not find any facts not conforming to the agreed 
statement, unless the agreement provides otherwise. State Bar v. Faubion, 
821 S.W.2d 203, 205 (Tex. App.—Houston [14th Dist.] 1991, writ 
denied). Accordingly, we will review only the correctness of the trial court's 
application of law to the stipulated facts, and not infer or find any facts 
absent from the parties' stipulation. See Rabinowitz v. Cadle Co. II, Inc., 
993 S.W.2d 796, 797 (Tex. App.—Dallas 1999, pet. denied); Gibson v. Drew 
Mortgage Co., 696 S.W.2d 211, 213 (Tex. App.—Houston [14th 
Dist.] 1985, writ ref'd n.r.e.).
        In 
a trial to the court where no findings of fact or conclusions of law are filed, 
the trial court’s judgment implies all findings of fact necessary to support 
it. Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996). Where a 
reporter’s record is filed, however, these implied findings are not 
conclusive, and an appellant may challenge them by raising both legal and 
factual sufficiency of the evidence. Roberson v. Robinson, 768 S.W.2d 
280, 281 (Tex. 1989). Where such issues are raised, the applicable standard of 
review is the same as that to be applied in the review of jury findings or a 
trial court's findings of fact. Id. Where the implied findings of fact 
are supported by the evidence, it is our duty to uphold the judgment on any 
theory of law applicable to the case. Worford v. Stamper, 801 S.W.2d 108, 
109 (Tex. 1990); Point Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 
(Tex. 1987). We must uphold the judgment regardless of whether the trial court 
articulates the correct legal reason for the judgment. See Harrington v. R.R. 
Comm'n, 375 S.W.2d 892, 895 (Tex. 1964); Dale v. Fin. Am. Corp., 929 
S.W.2d 495, 497-98 (Tex. App.—Fort Worth 1996, writ denied).STIPULATED FACTS
        On 
August 22, 1996 Frances McAdams purchased a manufactured home and executed a 
retail installment contract and security agreement for the purchase. Appellant 
purchased the contract and obtained a perfected security interest in the 
manufactured home, which was noted on the certificate of title. McAdams became 
delinquent in the property taxes. Boyd ISD and Wise County perfected tax liens 
on the home for the tax years 1997-2000.
        Because 
of the delinquent taxes, an order for a tax warrant was entered on December 11, 
2000. The warrant issued on December 18, 2000, and the taxing authorities seized 
the home the same day. The home was posted for foreclosure because of the unpaid 
taxes, and appellant received notice on January 6, 2001. On January 17, 2001 the 
home was sold at public auction to appellee, J & J Mobile Homes d/b/a Select 
Homes. The parties stipulate that the taxing authorities followed the statutory 
requirements of a summary tax sale under the Texas Tax Code. Tex. Tax Code Ann. §§ 33.21-.25 
(Vernon 2001).
        Acting 
pursuant to a court order granting appellant’s Motion to Distribute Excess 
Proceeds, the district clerk sent a check for $5,872.37. Appellant accepted the 
check, leaving a balance owed on the home of $74,850.13, plus interest.
        The 
parties agree that, until the date of the tax sale, appellant had a valid 
security interest in the home. The status of appellant’s lien is only 
contested after the tax sale.
PRIORITY OF THE TAX LIEN
        Appellant 
presents three issues on appeal. In its first issue, it claims that the trial 
court erred in concluding that its lien was extinguished by the January 17, 2001 
tax sale.
        Under 
the Texas Tax Code, on January 1 of each year, a tax lien attaches to property 
to secure the payment of all taxes imposed for the year, regardless of whether 
the taxes are imposed in the year the lien attaches. Tex. Tax Code Ann. § 32.01(a) (Vernon 
2001). Moreover, the tax code 
dictates that:
[A] tax lien provided by this chapter takes priority 
over the claim of any creditor of a person whose property is encumbered by the 
lien and over the claim of any holder of a lien on property encumbered by the 
tax lien, whether or not the debt or lien existed before attachment of the tax 
lien.

Id. § 32.05(b). Although there are a certain 
exceptions to the priority status of tax liens, none are applicable to this 
case. See id. § 
32.05(c). 


        The 
parties do not dispute the fact that both appellant and the taxing authorities 
held duly perfected liens on the same property. Appellant’s lien was properly 
recorded on the certificate of title, and pursuant to the tax code, the tax lien 
attached to the property on January 1, 1997. Id. § 32.01(a). The 
Manufactured Housing Standards Act provides that proper registration and 
recordation of a lien under the Act is notice to all persons that the lien 
exists. Tex. Rev. Civ. Stat. Ann. art. 
5221f, § 19(m) (Vernon Supp. 2003). Liens recorded or registered under the Act 
have priority, in the chronological order of recordation, over other liens or 
claims against the manufactured home, other than as expressly provided by 
Chapter 32, Tax Code. Id. Thus, 
any priority status granted by the act is made subject to the provisions of the 
tax code, which expressly grant priority status to tax liens. Tex. Tax Code Ann. § 32.05(b). 
Therefore, under section 32.05(b) of the tax code, the tax lien was superior to 
appellant’s lien. Id.
        To 
protect the property interests of other lienholders, a taxing authority is 
required to comply with certain notice and procedural requirements before 
selling property at a tax sale to collect delinquent taxes. See id. § 
33.25; see also Burleson v. Gen. Elec. Capital Corp., 831 S.W.2d 54, 60 
(Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding that 
lack of notice of a tax sale to junior lienholders is a basis for a claim for 
damages against the taxing authority). Even so, failure to send notice to a 
junior lienholder does not affect the validity of the sale or title to the 
seized property. See Tex. Tax Code 
Ann. § 33.25(b). Although appellant does not dispute that it received 
proper notice of the tax sale, appellant nonetheless claims that its lien on the 
home survives a properly conducted tax sale on the property. We hold that it 
does not.
        Appellant 
relies heavily on Burleson v. General Electric Capital Corporation. In Burleson, 
GECC, the junior lienholder, financed the purchase of a mobile home and duly 
perfected its lien. 831 S.W.2d at 57. Because of delinquent taxes, a tax 
warrant issued, the home was seized, and a summary sale conducted. Id. 
The taxing authority failed to conduct a reasonable search to determine whether 
other lienholders existed on the home. Id. at 58. As a result, GECC was 
not given notice of the sale. Id. Consequently, the purchaser of the home 
at the tax sale also had no notice that a lien existed on the home. Id.
        The 
Burleson court held that the purchaser was a bona fide purchaser who 
bought the home in good faith, for valuable consideration, without knowledge of 
any outstanding claims against the property. Id. at 59. GECC’s lien was 
extinguished by the tax sale, and it was unable to defeat the purchaser’s 
title because of the purchaser’s bona fide status. Id. Although GECC 
could not defeat the purchaser’s claim of title based upon lienholder’s lack 
of notice, the court did not preclude GECC from recovering from the governmental 
entities on a negligence theory because they failed to give notice of the tax 
sale. Id. at 60.
        Burleson 
can be distinguished from the present case since the present case does not 
involve a bona fide purchaser, or a claim for damages against the taxing 
authority. The holding of Burleson provides recourse for perfected junior 
lienholders, who are damaged when governmental authorities deprive them of their 
property rights, by extinguishing their lien in foreclosure, without proper 
notice. See Burleson, 831 S.W.2d at 60. Here, appellant received 
proper notice.
        The 
court and the junior lienholder in Burleson both recognized that the 
junior lien did not survive the foreclosure of a superior tax lien. See id. at 
60 (noting that the lienholder’s lien was “cut off” by the tax warrant 
sale and that the lienholder was deprived of its interest in the property). 
Moreover, the lienholder in Burleson never 
claimed that its lien survived the tax sale. Id. It was the appellants in 
Burleson who argued that the lien survived the tax sale in an attempt to 
avoid GECC’s claim for damages.
        In 
the present case, the taxing authority followed all required statutory 
procedures and provided adequate notice to appellant. The Burleson 
holding tends to support appellee’s proposition that appellant’s junior lien 
was extinguished by foreclosure of the senior tax lien. It stands to reason that 
if an improperly conducted tax sale is sufficient to “cut off” the junior 
lienholder’s interest in the property, a properly conducted tax sale does so 
as well.
        The 
law of secured transactions and common law also provide us with guidance. 
 

 Under the business and commerce code, the 
 disposition of collateral after default transfers to the transferee for value 
 all of the debtor’s rights in the collateral. Tex. Bus. & Com. Code Ann. §§ 
 9.617, 9.622 (Vernon 2002). Disposition by foreclosure discharges the security 
 interest being foreclosed, as well as any subordinate interests and liens. 
 Id. § 9.617. Common-law also applies to both real and personal 
 property.
        The 
Texas Supreme Court has noted that proper notice and foreclosure of a lien on 
property causes legal and equitable title in the property to merge. See Flag-Redfern 
Oil Co. v. Humble Exploration Co., 744 S.W.2d 6, 9 (Tex. 1987); Arnold v. 
Eaton, 910 S.W.2d 181, 184 (Tex. App.—Eastland 1995, no writ). 
Accordingly, in foreclosure prior lienholders are divested of title to the 
property, and their liens are extinguished. See Nat’l W. Life Ins. Co. v. 
Acreman, 425 S.W.2d 815, 817 (Tex. 1968). Following the valid foreclosure of 
a senior lien, junior liens, if not satisfied from the proceeds of sale, are 
extinguished. Acreman, 425 S.W.2d at 817-18; Eaton, 910 S.W.2d at 
184; Mortgage & Trust, Inc. v. Bonner & Co., 572 S.W.2d 344, 352 
(Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). Thus, when a senior 
lien is foreclosed, the purchaser at the sale acquires title to the property 
free from any junior lienholder claims. Diversified Mortg. Investors v. Lloyd 
D. Blaylock Gen. Contractor, Inc., 576 S.W.2d 794, 806 (Tex. 1978) (op. on 
reh'g); Irving Lumber Co. v. Alltex Mortg. Co., 468 S.W.2d 341, 343-44 
(Tex. 1971); Acreman, 425 S.W.2d at 817-18; Bonner & Co., 572 
S.W.2d at 352.
        Appellant 
agrees that the preceding rules apply to the foreclosure of real property; 
however, appellant argues that the legislature did not intend for liens on 
personal property to be extinguished. Appellant’s basis for its argument is 
the absence of a comparable section to section 33.95 of the tax code from the 
subchapter entitled “Seizure of Personal Property.” 

 Appellant reasons that the absence of the 
 provision indicates that the legislature intended that only purchasers of real 
 property at tax sales take free of junior liens and not those purchasing 
 personal property. Thus, appellant’s first issue presents us with a question 
 of statutory interpretation.
STATUTORY INTERPRETATION
        Statutory 
interpretation presents a question of law subject to de novo review. Mitchell 
Energy Corp. v. Ashworth, 943 S.W.2d 436, 437 (Tex. 1997) (orig. 
proceeding); State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996) (op. on reh'g). A 
trial court has no discretion when evaluating a question of law. See Huie v. 
DeShazo, 922 S.W.2d 920, 927 (Tex. 1996) (orig. proceeding); Walker v. 
Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Accordingly, we 
give no particular deference to the trial court's findings. Walker, 827 
S.W.2d at 840. Instead, we conduct an independent review and evaluate the 
statute to determine its meaning. See Nipper-Bertram Trust v. Aldine 
I.S.D., 76 S.W.3d 788, 791-94 (Tex. App.—Houston [14th Dist.] 
2002, pet. denied) (interpreting the Texas Tax Code); Lozano v. Lozano, 
975 S.W.2d 63, 66 (Tex. App.—Houston [14th Dist.] 1998, pet. 
denied).
        A 
court's primary objective in construing a statute is to determine and give 
effect to the legislative intent. Liberty Mut. Ins. Co. v. Garrison 
Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998). Under accepted 
principles of statutory construction, if the language of a statute is 
unambiguous, then the court must seek the legislative intent as found in the 
plain and common meaning of the words and terms used. Sorokolit v. Rhodes, 
889 S.W.2d 239, 241 (Tex. 1994). Common words should be interpreted as they are 
commonly used. Elgin Bank v. Travis County, 906 S.W.2d 120, 121 (Tex. 
App.—Austin 1995, writ denied).
        In 
our construction, we must presume that the entire statute is intended to be 
effective, a just and reasonable result is intended, a result feasible of 
execution is intended, and that the public interest is favored over private 
interest. See Tex. Gov’t Code 
Ann. § 311.021 (Vernon 1998); Compass Bank v. Bent Creek Inv., Inc., 
52 S.W.3d 419, 424 (Tex. App.—Fort Worth 2001, no pet.). Thus, we must 
consider the statute in its entirety, including the consequences that would 
follow from each proposed construction. Atascosa County v. Atascosa County 
Appraisal Dist., 990 S.W.2d 255, 258 (Tex. 1999). So long as another 
reasonable interpretation exists, we are required to reject an interpretation of 
a statute that defeats the purpose of the legislation. Id.; Dallas 
Cent. Appraisal Dist. v. Wang, 82 S.W.3d 697, 700 (Tex. App.—Dallas 2002, 
no pet.) (interpreting the Texas Tax Code). Construction of a statute that would 
make a provision useless is not favored by law. Carson v. Hudson, 398 
S.W.2d 321, 323 (Tex. Civ. App.—Austin 1966, no writ). 
        Specifically 
at issue in the present case, is the application of chapter 33, subchapter E, 
section 33.95 of the tax code, which provides:
A purchaser for value at or subsequent to the tax sale 
may conclusively presume the validity of the sale and takes free of any claim of 
a party with a prior interest in the property subject to the provisions of 
Section 16.002(b), Civil Practice and Remedies Code, and subject to applicable 
rights of redemption.

Tex. Tax Code 
Ann. § 33.95. Appellant argues that this provision, which is found in 
the Subchapter headed “Seizure of Real Property,” has no application in the 
present case because the manufactured home is considered personal property. 
Moreover, appellant reasons that the absence of a comparable provision from the 
subchapter titled “Seizure of Personal Property” indicates legislative 
intent that a tax sale should not extinguish pre-existing junior liens after a 
properly conducted tax sale. We disagree.
        Subchapter 
E of the Texas Tax Code was added by senate bill 1545 during the seventy fourth 
legislative session. Act of May 27, 1995, 74th Leg., R.S., ch. 1017, 
§ 1, 1995 Tex. Gen. Laws 5085, 5085-86 (amended 1997) (current version at Tex. Tax Code Ann. § 33.95 (Vernon 
2001)). When the legislature added subchapter E, it noted that subchapter B of 
chapter 33, which governed the seizure of personal property, provided an 
administrative process for taxing units to seize and sell personal property by 
warrant. House Comm. On Jurisprudence, 
Bill Analysis, Tex. S.B. 1545, 74th Leg., R.S. (1995). The 
legislature wanted to create a similar provision applicable to real property. Id.
        In 
response, the legislature enacted senate bill 1545, as chapter 33, subchapter E, 
of the tax code. The subchapter was created with the intent to empower 
municipalities to seize and sell real property by warrant in the same manner as 
personal property. Id. The 
overall goal of the legislation was to facilitate the seizure of abandoned, 
unused, or vacant properties, revitalize deteriorated neighborhoods, reduce 
governmental expenditures, and provide an increased tax base. Id.; Senate Comm.On Jurisprudence, Bill Analysis, 
Tex. S.B. 1545, 74th Leg., R.S. (1995).
        As 
the legislative history demonstrates, the legislature’s intent in enacting 
subchapter E of chapter 33 was simply to make the administrative process 
governing a taxing entity’s seizure of property uniform, regardless of whether 
the property seized was real or personal property. Nothing in the legislative 
history or in the language of the statute itself indicates legislative intent to 
supercede the common-law rule that foreclosure of a senior lien extinguishes all 
junior liens. Indeed, if junior liens were to survive a foreclosure sale, buyers 
would have no incentive to bid on the property. Such an outcome would undermine 
the legislature’s goals in enacting subchapter E. Although the heading of 
subchapter E, “Seizure of Real Property,” provides guidance with respect to 
its application, it should not be interpreted in a way that would limit the 
application of the statutes found under it. See Tex. Gov’t Code Ann. § 311.024.
        Additionally, 
the statute itself uses the word “property” and does not distinguish between 
realty or personalty. See Tex. Tax 
Code Ann. § 33.95. The tax code defines “property” as “any matter 
or thing capable of private ownership.” 
Id. § 1.04(1) (Vernon 2001). Thus, to interpret the statute in a 
manner that would limit its application solely to real property tax sales, as 
compared to all “property” sales, would be contrary to the overall purpose 
of the chapter.
        The 
absence of a similar statue in the personal property subsection of the tax code 
cannot be construed to mean that a purchaser of personal property does not take 
free of the junior lien, as a purchaser of real property would. To construe the 
tax code in this way would produce an absurd result and undermine the intent of 
the legislature to facilitate tax sales of real property in the same manner as 
personal property. Since Texas is one of the few states that allows real 
property to be foreclosed upon nonjudicially, the application of real property 
nonjudicial procedures to the disposition of personal property is a reasonable 
application. See Tex. Prop. Code 
Ann. § 51.002 (Vernon1995). The public interest is best served if, in 
accordance with common law and consistent with the purpose of the tax code, the 
purchaser of personal property at a tax sale takes the property free from any 
claim of a party with a prior interest. Likewise, appellant’s reliance on Burleson 
is misplaced because the Burleson court never addressed whether 
section 33.95 of the tax code applied to personal property since the section had 
yet to be added to the code at the time Burleson was heard.
        Appellant 
also argues that the use of the words “subject to applicable rights of 
redemption” limit the statute’s application to real property since there is 
no right of redemption with regard to personal property. Appellant cites no 
authority to support this proposition; accordingly, it is waived. See Tex. R. App. P. 38.1(h) (providing that 
arguments must be supported by appropriate citations to authorities); Fredonia 
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 ( Tex. 
1994) ( citing long-standing rule that a point may be waived due to inadequate 
briefing).
        Appellant 
further argues that the foreclosure of a tax lien is the same as a judgment lien 
and sale under execution. For authority he cites section 34.01 of the tax code, 
which states that the sale of property seized and sold in a tax sale shall be 
conducted in the manner similar to the way property is sold under execution. Tex. Tax Code Ann. § 34.01(a) (Vernon 
2001). Appellant reasons that under Texas Rule of Civil Procedure 643 a tax lien 
is the equivalent of a judicial lien created when an officer levies upon 
personal property under a writ of execution. Tex. R. Civ. P. 643. Appellant argues a 
tax lien is therefore subordinate to a security interest noted on the 
certificate of title. We disagree. Appellant ignores the fact that tax liens 
are, by statute, given express priority status over security interests noted on 
certificates of title. See Tex. Tax Code Ann. § 32.05. Section 
34.01 addresses the procedures required for a proper tax sale; it does not 
convert a tax lien into a judicial lien. Therefore, we hold that the January 17 
tax sale extinguished appellant’s junior lien. We overrule appellant’s first 
issue.
CONCLUSION
        In 
light of our holding, it is unnecessary for us to consider appellant’s 
remaining issues. Tex. R. App. P. 
47.1. The judgment of the trial court is affirmed.
 
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
PANEL B:   LIVINGSTON, 
DAUPHINOT, and HOLMAN, JJ.

DELIVERED: October 
16, 2003