

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-08-212-CV

IN THE INTEREST OF D.M.F., A CHILD

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION ON REHEARING

------------

After reconsidering our prior opinion on appellees' motion for rehearing, we deny the motion, but we withdraw our prior opinion and judgment dated December 11, 2008, and substitute the following, primarily to modify our discussion concerning subsection H of family code section 161.001(1). Tex. Fam. Code Ann. § 161.001(1)(H).

On January 11, 2007, the Texas Department of Family and Protective Services (TDFPS) removed one-day-old Donny from his mother, Sara, while she

was still in the hospital.[1] Appellant Jerry F., who was the alleged father, was served in February 2007 and in January 2008, once his paternity was established, entered his appearance in the termination suit brought by TDFPS to terminate both parents' rights to Donny. Jerry F.'s father, David F., intervened in January 2008. Furthermore, Donny's foster parents, appellees Bob and Susan Parsons, intervened, seeking termination and adoption of Donny. The trial court terminated both parents' rights and appointed appellees Donny's managing conservators. Jerry F. and David F. appealed the trial court's judgment. We reverse the trial court's order terminating Jerry F.'s parental rights and remand this case to the trial court.

**Facts**

Sara and Jerry F. had lived together in Tennessee. Before breaking up with Jerry F., Sara took two pregnancy tests, both of which were negative. When Sara left Tennessee, she moved to Texas. Sara was living in a women's shelter in Granbury at the time Donny was born and had a past history with TDFPS, along with a history of drug use and mental problems, so TDFPS filed for custody the day after Donny's birth.

---

[1] The names of the parents and parties subject to this appeal have been replaced with fictitious names in accordance with Texas Rule of Appellate Procedure 9.8. Tex. R. App. P. 9.8.

Sara filed an Affidavit of Status naming Jerry F. the alleged father, but he was not served until after the first hearing and after temporary orders had been entered. After service and completion of DNA testing identifying Jerry F. as the father, Jerry F. and David F. asked the trial court to place Donny with them. They also asked that appellees be struck from the suit. Likewise, appellees challenged Jerry F. and David F.'s standing to sue. The trial court denied both motions. TDFPS set up a service plan for Jerry F., which he performed from Tennessee for the next four months, including visiting with Donny, attending court hearings, completing parenting classes, having a home study, having a psychological evaluation, and staying employed. The trial court concluded the March 12, 2008 permanency hearing after the caseworker testified without allowing either appellant to testify.

The final hearing took place on April 2, 2008. The caseworker testified that Jerry F. had completed his services, except for the individual counseling. TDFPS recommended that Donny be placed with his father, which corresponded with the Tennessee-recommended placement. The ad litem questioned Jerry F. as to why he had failed to complete the individual counseling, to which he replied that he had just lost both of his paternal grandparents since the report's filing that had recommended individual counseling. The trial court stopped the trial and ordered Jerry F. to complete his counseling. The trial resumed on April

3

25, 2008 after Jerry F. had successfully completed his counseling, which the caseworker verified. The trial court nevertheless terminated Jerry F.'s and Sara's[2] parental rights and appointed appellees managing conservators of the child.

## Issues Presented

In four issues, appellants contend (1) the trial court's order terminating Jerry F.'s parental rights should be reversed because the requirements of Texas Family Code sections 161.001(1)(H) and (O), 161.001(2), and 153.131(a) were not satisfied, (2) the trial court's order terminating Jerry F.'s constitutionally protected fundamental rights as a parent should be reversed because termination under the circumstances presented by this case fails to satisfy the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (3) the trial court's order appointing appellees as managing conservators should be reversed, and (4) this court should enter the proposed order submitted by appellants in their motion to modify the final order, which requests, among other things, that Jerry F. and David F. be named joint managing conservators.

---

[2] Sara did not appeal the order.

4

**Sufficiency of the Evidence to Support Termination**

In appellants' first issue, they complain that the evidence is legally and factually insufficient to show proof of either ground for termination or that termination would be in Donny's best interest. Appellants contend that appellees have failed to establish by clear and convincing evidence at least one ground for termination under the family code or the best interest prong. *See* Tex. Fam. Code Ann. § 161.001 (Vernon 2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

**Standard of Review in Parent-Child Termination Cases**

A parent's rights to "the companionship, care, custody, and management" of his children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.

5

*Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *J.F.C.*, 96 S.W.3d at 263. This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the

allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2008).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573. If we determine that no reasonable

7

factfinder could form a firm belief or conviction that the grounds for termination were proven, then the evidence is legally insufficient, and we must generally render judgment for the parent. *J.F.C.*, 96 S.W.3d at 266; *see* Tex. R. App. P. 43.3.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108. If we reverse on factual sufficiency grounds, then we must detail in our opinion why we have concluded that a reasonable factfinder could not have credited disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266–67.

**Issues Presented**

In this case, appellees, the foster parents, sought termination under two subsections of the family code: subsection H and subsection O. Under subsection H they were required to show by clear and convincing evidence that the parent

> voluntarily, and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the child, and remained apart from the child or failed to support the child since the birth.

Tex. Fam. Code Ann. § 161.001(1)(H). Under subsection O they were required to show that the parent had

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who ha[d] been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 [Suit By Governmental Entity to Protect Health and Safety of Child] for the abuse or neglect of the child.

*Id.* § 161.001(1)(O). Appellees needed to prove at least one of these grounds and also show that termination was in the best interest of the child. *J.L.,* 163 S.W.3d at 84. The trial court found that they had proved both grounds and that termination was in the child's best interest by clear and convincing evidence.

9

**Statutory Interpretation**

Statutory construction is a legal question that we review de novo. *In re C.A.P., Jr.*, 233 S.W.3d 896, 900 (Tex. App.—Fort Worth 2007, no pet.). Accordingly, we give no particular deference to the trial court's determinations of what the law is. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Conseco Fin. Servicing Corp v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 883 (Tex. App.—Fort Worth 2003, pet. denied).

> In construing statutory language our objective is to determine and give effect to the Legislature's intent. We determine legislative intent from the statute as a whole and not from isolated portions. We presume the Legislature intended a fair and reasonable result. We also presume the Legislature included each word in the statute for a purpose, and that words not included were purposefully omitted.

*In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) (citations omitted). If the language is unambiguous, then the court must seek the legislative intent as found in the plain and common meaning of the words and terms used. *See* Tex. Gov't. Code Ann. § 312.002 (Vernon 2005); *In re K.L.V.*, 109 S.W.3d 61, 65 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993)).

**Subsection H**

Appellants argue that subsection H cannot apply to Jerry F. because at the times described in subsection H he was not a "parent" but an "alleged

father." *See* Tex. Fam. Code Ann. §§ 101.0015, 101.024 (Vernon 2008). Furthermore, appellants contend that it is improper to look to or consider the conduct of an alleged father before paternity has been established or acknowledged by the father. *See id.* We first look to the family code to answer this question.

The family code specifically defines the terms "parent" and "alleged father." A "parent" is "a man legally determined to be the father, . . . [or] a man who has acknowledged his paternity." *Id.* § 101.024. Furthermore, the code specifically defines an "alleged father" as "a man who alleges himself to be or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." *Id.* § 101.0015. TDFPS's original petition identified Jerry F. as an "alleged father," and appellees' intervening petition, which was not filed until after the DNA testing was complete, calls Jerry F. a "presumed father [who] has denied paternity." Based upon the completed DNA testing, however, on January 14, 2008, Jerry F. filed an answer admitting paternity and denying any and all bases for terminating his parental rights. Thus, by the time of the final hearing, Jerry F. was a parent who had acknowledged his paternity. *Id.* § 101.024.

Regardless, section 161.002, which applies to the termination of parental rights of an alleged father, directs that except as otherwise provided by that

11

section the "procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father." *Id.* § 161.002(a); *In re M.D.S.*, 1 S.W.3d 190, 196 (Tex. App.—Amarillo 1999, no pet.). Thus, we conclude and hold that the provisions of section 161.001 of the family code also apply to an alleged father, except for the standards of termination specifically listed in section 161.002(b).[3] Tex. Fam. Code Ann. § 161.002(b). Therefore, the trial court did not err in applying subsection H of section 161.001(1) to the case because Jerry F. was only an alleged parent during part of the times required by the statute. However, we must also address to what extent this particular subsection applies factually and what evidence is admissible to prove abandonment of the mother and child. Again, we look to the plain and common meaning of the statute. Tex. Gov't. Code Ann. § 312.002.

Appellants contend that it is improper to look to or consider the conduct of an alleged father before paternity has been established or acknowledged by the father. *See* Tex. Fam. Code Ann. §§ 101.024, 161.001(1)(H). We agree. Subsection H requires the petitioner to show that the parent (or alleged parent)

---

[3] Although appellees also sought termination under some of the specific provisions of section 161.002(b) applying solely to an alleged father, the trial court did not base its termination order on any of those grounds.

- voluntarily, *and with knowledge of the pregnancy*

- beginning *during her pregnancy* and continuing through the birth

- failed to provide the mother support and medical care *during the period of abandonment* AND

- remained apart from the child OR

- failed to support the child since birth.

*Id.* § 161.001(1)(H).

Importantly, this subsection is one of the few that requires scienter or prior knowledge of the pregnancy. *Id.; see* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 491 (1987). According to the statute, the abandonment of the mother, *with knowledge of her pregnancy*, must begin *before birth* and continue (as to the child) after the birth, and the failure to support must occur "during the period of abandonment." Tex. Fam. Code Ann. § 161.001(1)(H); *see, e.g., In re T.B.D.*, 223 S.W.3d 515, 519 (Tex. App.—Amarillo 2006, no pet.) (holding that evidence of abandonment under H was factually insufficient based, in part, on evidence that after father learned mother was pregnant, mother changed her phone number because father would not leave her alone); *In re C.H.*, 25 S.W.3d 38, 55 (Tex. App.—El Paso 2000) (looking at actions of presumed father with "full knowledge" of pregnancy), *rev'd on other grounds*, 89 S.W.3d 17 (Tex. 2002); *see also In re Stevenson*, 27 S.W.3d 195, 202

13

(Tex. App.—San Antonio 2000) (requiring knowledge under subsection D abandonment), *pet. denied*, 52 S.W.3d 735 (Tex. 2001). Thus, the abandonment must be with knowledge and occur both during the pregnancy and after the birth; all elements are required.

Here, the evidence showed that Sara was the one who left the state where she and Jerry F. had been residing, that she made contact only with David F. twice prior to giving birth to Donny, and that the last pregnancy tests she had taken before she left were negative. She went to Ohio first. She did not tell Jerry F. that she was pregnant until she was in Texas. That was two weeks before Donny was born. Jerry F. knew that she was pregnant then but did not know that the baby was his. There simply is no clear and convincing evidence of Jerry F.'s knowledge until he received the results from the DNA testing, at the earliest, or until he admitted paternity in his pleadings, at the latest. Donny was born on January 10, 2007 and his DNA testing was done on November 14, 2007; Jerry F.'s DNA testing was done on December 5, 2007 and completed in mid-December 2007; and Jerry F. admitted paternity in January 2008. None of these events occurred *before* Donny's birth. Until paternity was established, TDFPS could not give appellants information about Donny or schedule visits. Therefore, we conclude and hold that because there is no clear and convincing proof that Jerry F. had knowledge that Sara was

14

carrying his child until December 2007, *after* the child was born, the evidence could not show that he abandoned her *during* her pregnancy. Because subsection 161.001(1)(H) requires knowledge of the pregnancy and the failure to support the mother during the period of abandonment occurring before the birth, subsection H cannot apply. Therefore, we conclude that the evidence is legally insufficient to support the trial court's finding that Jerry F. abandoned Sara during her pregnancy and continuing through the birth of the child under subsection H of the family code.

**Response to Dissenting Opinion on Rehearing Regarding Subsection H**

The only person who testified that any of the pregnancy tests Sara took in Tennessee while still living with Jerry F. were positive was David F., who admittedly was not with them when they went to the clinic to take the tests. Regardless, the last two tests Sara took before she left Tennessee were negative and no one refutes this testimony. The dissent ignores this key fact stating merely that two tests were positive–which two? Furthermore, caseworker Ruth Garringer testified that Sara admitted to her that the pregnancy test she took in Tennessee with Jerry F. present showed that she was not pregnant. And while the dissent makes much of the fact that Sara and Jerry F. lived together in Tennessee for three months, the dissent ignores the fact that Sara was living with a new boyfriend in Ohio when she first called

15

David F. and told him she was pregnant. This hardly establishes clear and convincing evidence of Jerry F.'s knowledge of Sara's pregnancy as required by the statute.

Importantly, the dissent minimizes the burden of proof in a termination case as well as the standard of review we are to apply in review of a termination. In order to support a termination, the elements of termination are supposed to be found by the trier of fact by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d at 263–64. In other words there must be clear and convincing evidence at trial of each of the elements of the subsection under which termination is sought. Here, under subsection H the statute requires the proponent to show abandonment was "voluntary, and with knowledge of the pregnancy." Tex. Fam. Code Ann. § 161.001(1)(H). Thus, knowledge *is* an element to be proven by clear and convincing evidence.

And in cases such as this, where termination is based upon subsection H, "[i]n order for an enforceable obligation to exist requiring the support of an illegitimate child, there must be a court order, a judicial admission, or an unequivocal acknowledgment of paternity." *Djeto v. Tex. Dep't of Protective and Regulatory Servs., Inc.*, 928 S.W.2d 96, 98 (Tex. App.—San Antonio 1996, no writ). The dissent says *Djeto* does not apply because that termination

16

was based on subsection F not H, i.e., it only concerns whether there is an enforceable obligation of support. However, *Djeto* helps us answer the same question posed by F that is posed by H: when does the duty to support an illegitimate child begin? *Id.* at 98. Both subsections obviously require knowledge or acknowledgment of the pregnancy. *See* Tex. Fam. Code Ann. § 161.001(1)(F), (H); *Djeto*, 928 S.W.2d at 98. Subsection F's "knowledge" requirement is therefore by implication and by the reasoning of *Djeto*, whereas subsection H's "knowledge" requirement is by the statute's express words. *See* Tex. Fam. Code Ann. § 161.001(1)(F), (H); *Djeto*, 928 S.W.2d at 98. We do not believe the statute's "knowledge of the pregnancy" requirement can be written out of subsection H as the dissent suggests. We do not require direct evidence of a parent's or alleged father's knowledge of the pregnancy but rather clear and convincing evidence from which we can infer such knowledge. In this case, this simply did not happen until Jerry F. completed his DNA testing and acknowledged his paternity in his pleadings.

**Subsection O**

Additionally, Jerry F. contends that appellees failed to show by clear and convincing evidence that subsection O of section 161.001(1) of the family code was met. *See* Tex. Fam. Code Ann. § 161.001(1)(O). In particular, Jerry F. observes that subsection O first requires the existence of a valid, predicate

17

court order that a parent has failed to comply with to obtain the return of the child. No specific order was submitted into evidence or identified as being an order with which Jerry F. had not complied. While there was testimony about Jerry F.'s compliance with a service plan, it is unclear whether this was an order directed to Jerry F. Furthermore, if there was a predicate order, it was most likely the order entered after the child's removal from Sara which, as appellants note, was entered before Jerry F. was even served in 2007 or before he answered in January 2008. Therefore, we conclude that there is legally insufficient evidence of an order directed to Jerry F. that he violated as required by subsection O.

Additionally, Jerry F. was named as an alleged parent in TDFPS's Original Petition dated January 12, 2007, but his parentage was not established until December 5, 2007, when DNA testing was completed. He never had custody of the child; the child was removed directly from Sara at the hospital the day after he was born, based primarily on Sara's alleged mental condition. The child's removal had nothing to do with claims of abuse or neglect by Jerry F., at that time either the alleged father or acknowledged father. *See generally id.* § 161.001. Because the statute's language clearly requires removal from "the parent," it necessarily requires that the removal be from at least someone with possession. *See id*. Moreover, subsection O applies only to a child who

18

has been removed *from the parent* and placed with TDFPS due to the abuse or neglect of the child. *See id.*

Therefore, we hold that the evidence is legally insufficient to support the trial court's finding that Jerry F.'s parental rights should be terminated under subsection O of section 161.001(1) of the family code.

## Best Interest and Constitutionality

Because we have concluded that the evidence is legally insufficient to support the trial court's findings that Jerry F.'s parental rights should be terminated under either subsection H or O of section 161.001(1), we do not need to reach the best interest determination that was also challenged in issue one. *See* Tex. R. App. P. 47.1; Tex. Fam. Code Ann. § 161.001(1); *J.L.,* 163 S.W.3d at 84. Moreover, because we sustain appellants' first issue, we need not reach appellants' second issue challenging the constitutionality of the trial court's order of termination. *See* Tex. R. App. P. 47.1.

## Custody

In appellants' third issue, they challenge the trial court's appointment of appellees, the foster parents, as Donny's managing conservators. When parental rights are terminated, the family code requires appointment of managing conservators. *See* Tex. Fam. Code Ann. § 161.207(a) (Vernon 2008). Here appellees had no pleadings on file seeking appointment as

19

managing conservators under any other family code provision because their attempt to amend under section 153.371 during the termination and adoption hearing was struck. *Id.* §153.371 (Vernon 2008). In their original petition in intervention seeking termination, their live pleading at trial, they had not requested custody. Therefore, their appointment as managing conservators was not independent of Jerry F.'s termination. *See In re D.N.C.,* 252 S.W.3d 317, 318 (Tex. 2008). Therefore, we conclude and hold that the trial court erred in naming appellees managing conservators. *See Colbert v. Tex. Dep't of Family & Protective Servs.*, 227 S.W.3d 799, 816 (Tex. App.—Houston [1st Dist.] 2006), *pet. denied,* 252 S.W.3d at 317. We sustain appellants' third issue.

As to appellants' fourth issue, in which they contend that their proposed order naming them joint managing conservators be entered by this court, we sustain the issue in part but deny the specific relief requested. We remand this cause to the trial court for entry of appropriate orders directing the transfer of custodianship from the foster parents, appellees, to the father, Jerry F.[4]

---

[4] Because Jerry F. and David F. have jointly requested that they be named joint managing conservators of the child, we also instruct the trial court to name David F. a joint managing conservator if it determines that such an appointment is in the child's best interest.

**Conclusion**

Having sustained appellants' first and third issues and their fourth issue in part—and having not reached their second issue, we reverse the trial court's order terminating Jerry F.'s parental rights. We remand this cause to the trial court for entry of further orders consistent with this opinion.

TERRIE LIVINGSTON
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

CAYCE, C.J. filed a dissenting opinion.

DELIVERED: April 16, 2009



## NO. 2-08-212-CV

IN THE INTEREST OF D.M.F., A CHILD

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## DISSENTING OPINION

------------

I respectfully dissent because I disagree with the majority's holding that the evidence is legally insufficient to show that Jerry F. had the requisite knowledge of Sara's pregnancy during the pregnancy to support the termination of his parental rights under section 161.001(1)(H) of the Texas Family Code.[1]

The evidence shows the following:

- While Jerry F. and Sara were living together, Jerry F. took Sara to a pregnancy clinic in Tennessee because she said she was pregnant. Two of four pregnancy tests were positive.

---

[1] *See* Tex. Fam. Code Ann. § 161.001(1)(H) (Vernon 2008).

- Jerry F. knew that Sara told his grandmother that she was pregnant while they lived with his grandmother.

- Jerry F. knew that Sara had called his father to tell him that she was pregnant and that the child was Jerry F.'s.

- Jerry F. testified that, in light of the fact that he and Sara lived together and had sex, he knew that Sara contended he was the father.

- Jerry F. knew that Sara was having a baby and knew that she was asking his father for money to help with expenses.

- Jerry F.'s father talked to Jerry F. about holding up his responsibility to help support Sara while Sara was pregnant.

- Sara contacted Jerry F. two weeks before delivery to ask him to sign away his rights to D.M.F.

I believe this is clear and convincing evidence that Jerry F. had knowledge that Sara was pregnant during the pregnancy and that the baby was his.

I agree with the majority that section 161.001(1)(H) requires that there be "clear and convincing" evidence of Jerry F.'s knowledge that Sara was pregnant with his child. But, I disagree with the majority's conclusion that the clear and convincing standard in this case was only met by *direct* evidence of such knowledge—Jerry F.'s DNA testing and his judicial admission of paternity. This assumes an elevated burden of proof for scienter that can never be met in most termination cases based on subsection (H).

2

Although the majority says they do not require direct evidence of knowledge, their analysis of the evidence in this case tells a different story. In reviewing the legal sufficiency of the evidence of Jerry F.'s knowledge, the majority has disregarded all of the clear and convincing circumstantial evidence of Jerry F.'s knowledge of the pregnancy prior to the DNA testing (as well as direct evidence of his knowledge from the two positive pregnancy tests) to reach the conclusion that there is no clear and convincing evidence of knowledge prior to the testing. In so doing, the majority is clearly equating the only evidence of knowledge that it believes meets the clear and convincing standard with direct evidence.

In addition, by disregarding the direct evidence of Jerry F.'s knowledge based on the two positive pregnancy tests and instead considering the contrary evidence of the two negative tests, the majority has misapplied the legal sufficiency review standard. In performing a legal sufficiency review, the appellate court *must* consider evidence favorable to the finding if a reasonable fact-finder could and *disregard* evidence contrary to the finding *unless* a reasonable fact-finder could not.[2] In light of the entire record, we, therefore, must consider the favorable evidence of two positive pregnancy tests in

---

[2] *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

3

determining whether Jerry F. had knowledge of the pregnancy because a reasonable fact-finder could not disregard that evidence. On the other hand, a reasonable fact-finder could disregard the contrary evidence of the two negative tests. The majority should have disregarded it, as well.

Furthermore, the majority conflates the legal standard for ascertaining whether an enforceable obligation to pay child support for an illegitimate child exists under subsection (F) of section 161.001(1), with the burden of proof and evidentiary standard for determining whether there is legally sufficient evidence that an alleged father has knowledge of the pregnancy under subsection (H). The majority contends that the following standard applies to *knowledge* of the pregnancy:

> "In order for an *enforceable obligation* to exist requiring the support of an illegitimate child, there must be a court order, a judicial admission, or an unequivocal acknowledgment of paternity." *Djeto v. Tex. Dept. of Protective & Regulatory Servs.*, 928 S.W.2d 96, 98 (Tex. App.—San Antonio 1996, no writ). [emphasis added]

This, however, is the standard for determining whether a parent has a duty to provide support for a child for the purpose of terminating the parent-child relationship under subsection (F).[3] It plainly is not the standard for determining

---

[3] *See* Tex. Fam. Code Ann. § 161.001(1)(F) (providing that court may terminate parent-child relationship where parent has "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition").

whether an alleged father has sufficient *knowledge* of a pregnancy to support termination under subsection (H).[4]  By construing the two subsections as answering the "same question," the majority renders subsection (H) both redundant and meaningless.

Moreover, by requiring positive DNA testing or a judicial admission of paternity to satisfy the knowledge requirement of subsection (H), the majority emasculates one of the important public policy purposes of the statute—to encourage fathers and alleged fathers who possess the requisite knowledge of a pregnancy to provide the unwed mother adequate support and medical care during the pregnancy and through birth.[5]  The penalty for fathers who fail to provide such support during the pregnancy is loss of their parental rights to the child.   Under the majority's analysis, however, a father who possesses knowledge of the pregnancy can avoid this responsibility with impunity, and wait to assert his parental rights to the child until after the child is born.

---

[4] Oddly, the majority claims that I have "written out" subsection (H)'s knowledge requirement by requiring less than a judicial admission, court order, or unequivocal acknowledgment of paternity to prove knowledge of a pregnancy under subsection (H).  But, it is the majority that has eviscerated the knowledge requirement of subsection (H), not me.  By holding that knowledge of a pregnancy must be established by the same facts for proving the existence of an enforceable support obligation under subsection (F), the majority is requiring more than subsection (H) requires for proving such knowledge—clear and convincing evidence. *See id.* § 161.001(1)(H).

[5] *Id.*

5

Consequently, few, if any, fathers or alleged fathers will be subject to having their parental rights terminated under subsection (H) for voluntarily failing to provide support to the mother of their child during her pregnancy.

The burden of proof applicable to subsection (H) is clear and convincing evidence.[6] The evidentiary standard for reviewing the legal sufficiency of the evidence when the burden of proof is clear and convincing evidence is the heightened standard of review articulated in *In re J.F.C.*[7] Under this heightened standard, the evidence in this case needed to be such that the factfinder could reasonably form a firm belief or conviction that Jerry F. had knowledge of Sara's pregnancy during the pregnancy. Viewing all the evidence in the light most favorable to the trial court's finding, and giving appropriate deference to the trial court's conclusions and resolution of disputed facts,[8] I believe the evidence in this case, both direct and circumstantial, that Jerry F. knew Sara was pregnant with his baby during her pregnancy is sufficient to meet this burden.

---

[6] *Id.* §§ 161.001, 161.206(a).

[7] 96 S.W.3d 256, 266 (Tex. 2002).

[8] *Id.* at 266. Contrary to the majority's assertion that I have ignored evidence that may not favor the trial court's findings, I have considered all of the evidence in the appropriate light and disregarded only the evidence that a reasonable factfinder could have disbelieved. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

6

Because I believe there is clear and convincing evidence of Jerry F.'s knowledge of Sara's pregnancy during all relevant time periods, I would affirm the trial court's judgment.


JOHN CAYCE
CHIEF JUSTICE

DELIVERED:  April 16, 2009