

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00452-CV

IN THE INTEREST OF A.S.L.,
A CHILD

----------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant C.A. appeals the trial court's order terminating his parental rights to his child, A.S.L. (Adam).[2]  In one point, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings under section 161.001(1) of the family code.[3]  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect the identity of the parties, we will identify them through initials and aliases.  *See* Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008); Tex. R. App. P. 9.8(b).

[3]*See* Tex. Fam. Code Ann. § 161.001(1) (Vernon Supp. 2010).

**Background Facts**

Adam was born in May 2007 to D.C. (Mother) and appellant. Appellant was not present at Adam's birth, and Mother put appellee M.L.'s name on the birth certificate because she was confused and "wasn't really sure" who the father was. Mother had moved in to live with appellee approximately four months prior to Adam's birth.[4] To resolve the doubts as to the identity of Adam's father, appellant and Mother completed DNA testing. The results of the test confirmed that appellant is the biological father.[5] Appellant saw Adam one to two times per week for about three or four months after his birth, but then appellant stopped seeing Adam awhile because appellant and Adam's grandmother had an argument.

In September 2008, appellant filed a pro se petition to establish parentage. Later, appellant hired an attorney and appeared by counsel. In March 2009, the trial court ordered up to three supervised visits per week for appellant. Although appellant exercised this right once and saw Adam for the first time since 2007, he failed to visit Adam at any other time during the pendency of the case. In July 2009, the trial court allowed appellant's counsel to withdraw from representation. Appellant did not retain substitute counsel and has continued pro se through the end of trial and this appeal.

---

[4]Mother and appellee have lived together off and on since 2000.

[5]The parties also stipulated at trial that appellant is Adam's father.

On July 1, 2009, appellee filed a counterpetition, in which he asked the trial court to terminate appellant's parent-child relationship with Adam and to name appellee sole managing conservator. The trial court held a termination trial in December 2009, at which time Adam was two and a half years old. The bench trial, in which appellant, Mother, and appellee testified, lasted less than one day. At the end of the trial, the court announced its decision to terminate appellant's parental rights.

In February 2010, the trial court entered an order that adjudicated appellant as Adam's biological father, terminated appellant's parental rights, and appointed Mother and appellee as joint managing conservators. The trial court found that clear and convincing evidence established that appellant (1) voluntarily left Adam alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of Adam, and remained away for a period of at least three months and (2) failed to support Adam in accordance with his ability during a period of one year ending within six months of the date of the filing of the termination petition. *See* Tex. Fam. Code Ann. § 161.001(1)(B), (F). The court also found by clear and convincing evidence that termination was in Adam's best interest. *See id.* § 161.001(2).

Appellant filed a notice of appeal. The trial court declined to appoint appellate counsel for appellant.[6]

## Sufficiency of the Evidence to Support Termination

In his sole point, appellant challenges the termination of his parental rights, complaining that the evidence is legally and factually insufficient to support the trial court's findings on the grounds of section 161.001(1), subsections (B) and (F). Appellant does not contest the trial court's finding that termination of the parent-child relationship is in the best interest of the child.

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for

---

[6]Appellant's brief asserts a complaint regarding his entitlement to counsel in the termination trial below. But although the trial court had the discretion and authority to appoint counsel, appellant was not entitled to counsel. *See* Tex. Fam. Code Ann. § 107.013(a)(1) (Vernon 2008) (explaining that in a "*suit filed by a governmental entity* in which termination of a parent-child relationship is requested," the trial court shall appoint an attorney ad litem to represent the interests of an indigent parent who responds in opposition to the termination) (emphasis added); *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied) ("Because Tracy's parental rights were terminated pursuant to a private termination suit, she possessed no mandatory statutory right to appointed counsel."), *cert. denied*, 130 S. Ct. 1281 (2010); *see also In re C.M.R.*, No. 02-07-00394-CV, 2008 WL 4963510, at *2 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (mem. op.) (explaining that "the appointment of counsel in a private termination is within the trial court's sound discretion"). Thus, to the extent appellant attempts to assert the complaint about not having counsel as a separate point, we overrule it.

courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the petitioner seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute. Tex. Fam. Code Ann. § 161.001(1); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, .206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

5

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that appellee proved the grounds for termination. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that appellant violated subsections (B) or (F) of section 161.001(1). *See* Tex. Fam. Code Ann. § 161.001(1)(B), (F); *In re C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have

6

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

Section 161.001(1)(F) allows involuntary termination where the parent has failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition. Tex. Fam. Code Ann. § 161.001(1)(F); *see In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.—El Paso 2007, no pet.) ("The one-year period begins no earlier than eighteen months before the petition to terminate is filed."). One year means twelve consecutive months, and there must be proof the parent had the ability to support during each month of the twelve-month period. *E.M.E.*, 234 S.W.3d at 72; *see In re L.J.N.*, 329 S.W.3d 667, 672 (Tex. App.—Corpus Christi 2010, no pet.); *In re J.R.,* 319 S.W.3d 773, 777 (Tex. App.—El Paso 2010, no pet.); *In re Z.W.C.*, 856 S.W.2d 281, 283 (Tex. App.—Fort Worth 1993, no writ). The burden of proof is on the party seeking termination to prove by clear and convincing evidence that the parent had the ability to pay during each of the months. *L.J.N.*, 329 S.W.3d at 672; *E.M.E.*, 234 S.W.3d at 72.

Appellee filed his "First Amended Counter-Petition to Adjudicate Parentage," which sought to terminate the parent-child relationship between appellant and Adam, on July 1, 2009.[7] Thus, we must determine whether the

---

[7]The original counterpetition, which appellee filed in October 2008, did not request termination of appellant's parental rights.

evidence establishes that appellant failed to support Adam for twelve consecutive months between January 1, 2008 and July 1, 2009, and whether the evidence establishes that appellant had an ability to pay within that same twelve-month period. *See E.M.E.*, 234 S.W.3d at 72 ("Given that Elkabachi filed her petition on May 17, 2006, we must determine whether the evidence established that Carrillo failed to support the child for twelve consecutive months between November 17, 2004 and May 17, 2006.").

Appellant admitted that he had not paid child support to any person at least since the time he filed his petition to establish parentage on September 29, 2008. He testified that he gave between $75 and $150 a week to Adam's grandmother until the two got into an argument sometime prior to the time he filed the petition. On cross-examination, however, he conceded, "I guess it was 2007" when he had last "provided any sort of financial support for the child." In any event, both Mother and appellee testified that neither had received any support from appellant at any time since Adam was born. Thus, the evidence supports the trial court's determination that appellant failed to support the child for a period of twelve consecutive months between January 1, 2008 and July 1, 2009.

The record also supports the trial court's finding that appellant had an ability to pay during the relevant period. Appellant was working as a tattoo artist when Adam was born in 2007. During the early months of 2008, appellant owned two tattoo shops, which generated income for him until he was arrested

on June 5, 2009.[8]  As the owner of the tattoo shops, he earned $5,000 to $6,000 each month, receiving $3,500 average monthly net income.  Also, the evidence reveals that appellant made payments to Father's Choice in an effort to see Adam despite being dissatisfied with the services he had received and that he paid for an attorney in connection with this case.[9]  Therefore, evidence supports the trial court's determination that appellant had an ability to support Adam during each month of the period.

Appellant cites *Prokopuk v. Offenhauser* to support his argument that he had no duty to support the child until after his paternity was officially established. 801 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1990, writ denied) ("We . . . hold that where a father *has doubts as to his paternity*, there is no enforceable obligation to support an illegitimate child before paternity is established.") (emphasis added).  However, unlike the mother in *Prokopuk*, who denied the appellant's paternity at all times from the child's birth until the conclusion of the trial, Mother and appellee have recognized appellant as the biological father at all times since receiving the DNA test results and even stipulated to that fact at trial. Appellant acted like Adam's father in 2007 when he visited Adam, provided some

_____

[8]At the time of the termination trial, appellant was incarcerated with bail set at $1,000,000 pending his criminal trial.  He had been charged with two counts of attempted capital murder of a police officer and possession of prohibited weapons.  He acknowledged that he could face a life sentence if convicted. He testified, "I do understand that I might be put away for a while."

[9]Appellant states in his brief that he made monthly payments to Father's Choice for "legal counsel."

9

financial support for him, and hired Father's Choice once the argument with Adam's grandmother occurred. Appellant has never doubted or disputed his paternity. Thus, we hold that appellant had a duty to support Adam at least by January 1, 2008, and continuing in the time period relevant to section 161.001(1)(F). *See In re B.T.*, 954 S.W.2d 44, 49 (Tex. App.—San Antonio 1997, writ denied) ("Th[e] duty of support exists regardless of whether a parent is court-ordered to support the child."); *R.W. v. Tex. Dep't of Protective & Regulatory Servs.*, 944 S.W.2d 437, 440 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("And just like all other parents, these duties arose long before appellant filed his voluntary statement of paternity and without regard to any adjudication by a court establishing his parentage. The duty existed from the moment appellant, by his actions, recognized the child as his own."); *Jimenez ex rel. Little v. Garza*, 787 S.W.2d 601, 603 (Tex. App.—El Paso 1990, no writ) ("[T]here would be no duty arising in absence of a court order, where a father has doubt as to his paternity. *But where there is a judicial admission or an unequivocal unretracted acknowledgment, the duty to support addressed in termination proceedings should commence from the date of admission or acknowledgment*.") (emphasis added); *see also In re D.M.F.*, 283 S.W.3d 124, 133 (Tex. App.—Fort Worth 2009, pet. granted, judgm't vacated w.r.m.) (reasoning that a parent has an enforceable obligation to support a child once the parent has unequivocally acknowledged paternity).

For these reasons, we hold that the evidence is legally and factually sufficient to support the trial court's finding that appellant's parental rights to Adam should be terminated under subsection (F) of section 161.001(1). We overrule appellant's sole point.[10]

Because a petitioner must establish only one of the acts or omissions enumerated under subdivision (1) of section 161.001, we will not address whether the evidence is legally and factually sufficient to support the trial court's finding under subsection (B).  *See* Tex. Fam. Code Ann. § 161.001(1); Tex. R. App. P. 47.1; *In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.).

---

[10]Additionally, appellant asserts that the trial court violated his due process rights when it terminated his parental rights.  However, he fails to cite case law or provide analysis explaining how the proceedings below denied him due process. Because appellant's brief does not contain adequate argument supporting his contention about due process, we overrule the contention.  *See* Tex. R. App. P. 38.1(i); *In re J.B.W.*, 99 S.W.3d 218, 225 n.35 (Tex. App.—Fort Worth 2003, pet. denied).  We note that appellant initiated this case by filing his petition to establish parentage, that the termination order recites that "all persons entitled to citation were properly cited," and that appellant was represented during part of the trial court's proceedings and appeared and testified at trial.  *See In re K*, 520 S.W.2d 424, 427–28 (Tex. Civ. App.—Corpus Christi 1975) (rejecting a parent's argument of denial of due process in an analogous procedural scenario), *aff'd*, 535 S.W.2d 168 (Tex.), *cert. denied*, 429 U.S. 907 (1976)).

**Conclusion**

Having overruled appellant's only point, we affirm the trial court's order terminating appellant's parental rights to Adam.[11]

                                          TERRIE LIVINGSTON
                                          CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  May 26, 2011

---

[11]In August and September 2010, appellant filed motions in this court concerning unsealing the trial court's record so that he could comply with the briefing requirements contained in the rules of appellate procedure.  The trial court unsealed the record on October 1, 2010, and appellant has not requested to amend his brief since that time.  Thus, we deny as moot appellant's "Motion to Unseal Court Records and Request Extension of Time to File Appeallants [sic] Brief" and "Motion for Extension of Time."  *See Eastman v. Willowick Apartments*, 139 S.W.3d 348, 349 (Tex. App.—Fort Worth 2004, no pet.).